# 24-1459-cv

## United States Court of Appeals
### *for the*
## Second Circuit

---

HAMILTON RESERVE BANK LTD.,

*Plaintiff-Appellee,*

JESSE GUZMAN, ULTIMATE CONCRETE, LLC,
INTERCOASTAL FINANCE LTD.,

*Intervenors-Appellants,*

– v. –

THE DEMOCRATIC SOCIALIST REPUBLIC OF SRI LANKA,

*Defendant.*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR INTERVENORS-APPELLANTS

ROBERT L. EDWARDS
GORDON DAVIS JOHNSON
& SHANE P.C.
4695 North Mesa
El Paso, Texas 79912
(915) 545-1133

JAMES H. SMITH
GRANT L. JOHNSON
MCKOOL SMITH P.C.
1301 Avenue of the Americas, 32nd Floor
New York, New York 10019
(212) 402-9400

*Attorneys for Intervenors-Appellants*

CP COUNSEL PRESS (800) 4-APPEAL • (323375)

## CORPORATE DISCLOSURE STATEMENT

Appellant Intercoastal Finance Ltd. does not have a parent corporation, and no publicly held company owns 10 percent or more of its stock. Appellant Ultimate Concrete LLC does not have a parent corporation, and no publicly held company owns 10 percent or more of its stock.

# **Table of Contents**

**Page(s)**

PRELIMINARY STATEMENT ..................................................1

JURISDICTIONAL STATEMENT ...........................................2

STATEMENT OF ISSUES PRESENTED FOR REVIEW ...............2

STATEMENT OF THE CASE.................................................3

SUMMARY OF THE ARGUMENT .........................................8

ARGUMENT ...................................................................9

    I.    STANDARD OF REVIEW ...........................................9

    II.    THE DISTRICT COURT APPLIED AN INCORRECT
         STANDARD WHEN CONCLUDING THAT IT LACKED
         SUPPLEMENTAL JURISDICTION OVER APPELLANTS'
         CLAIMS ..............................................................10

    III.    APPELLANTS ARE ENTITLED TO INTERVENE AS OF
         RIGHT IN THE UNDERLYING ACTION .....................11

         A.    Appellants have an interest in the property that is the
              subject of the action. .............................................12

         B.    Without intervention, disposition of the action will, as a
              practical matter impair Appellants' ability to protect their
              interest in the Bonds.............................................15

         C.    Appellants' interest is not adequately represented by the
              other parties. .......................................................15

         D.    Intervention is timely. ...........................................16

    IV.    APPELLANTS' CLAIMS SHARE A COMMON NUCLEAUS
         OF OPERATIVE FACT WITH THE PRIMARY CLAIMS ...........18

CONCLUSION ................................................................19

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**CASES**

*Achtman v. Kirby, McInerney & Squire,*
   LLP, 464 F.3d 328 (2d Cir. 2006) ............................................................12, 21

*Brennan v. N.Y.C. Bd. of Educ.,*
   260 F.3d 123 (2d Cir. 2001) .......................................................................14, 15

*Gargano v. Morey,*
   165 A.D.3d 889 (2d Dep't 2018) .....................................................................17

*Grace United Methodist Church v. City of Cheyenne,*
   451 F.3d 643 (10th Cir. 2006) .........................................................................14

*In re Bank of New York Derivative Litig.,*
   320 F.3d 291 (2d Cir. 2003) .......................................................................12, 19

*In re New York City Policing During Summer 2020 Demonstrations,*
   27 F.4th 792 (2d Cir. 2022) ..............................................................................12

*John v. Sotheby's, Inc.,*
   141 F.R.D. 29 (S.D.N.Y. 1992) ........................................................................18

*Lawsky v. Condor Capital Corp.*
   2014 WL 2109923 (S.D.N.Y. 2014) .................................................................16

*Md. Cas. Co. v. W.R. Grace & Co.,*
   1996 U.S. Dist. LEXIS 868 (S.D.N.Y. Jan. 29, 1996) .....................................13

*Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.,*
   72 F.3d 361 (3d Cir. 1995) ...............................................................................15

*Mut. Fire, Marine & Inland Ins. Co. v. Adler,*
   726 F. Supp. 478 (S.D.N.Y. 1989) ...................................................................13

*NAACP v. New York,*
   413 U.S.345 (1973).............................................................................................19

ii

*Peterson v. Islamic Republic of Iran*,
    290 F.R.D. 54 (S.D.N.Y. 2013) ..........................................................15

*Republic of the Philippines v. Abaya*,
    312 F.R.D. 119 (S.D.N.Y. 2015) ........................................................15

*Stuff Elecs. (Dong Guan) Ltd. v. For Your Ease Only, Inc.*,
    509 F. Supp. 3d 252 (E.D. Pa. 2020) .................................................16

*Torres v. $36,256.80 U.S. Currency*,
    25 F.3d 1154 (2d Cir. 1994) ...............................................................17

*United States v. Mitchell*,
    2008 WL 11454765 (S.D. Ohio July 22, 2008)...................................14

*United States v. Pitney Bowes, Inc.*,
    25 F.3d 66 (2d Cir. 1994) ............................................................14, 19

*Willis Mgmt. (Vermont), Ltd. v. United States*,
    652 F.3d 236 (2d Cir. 2011) ...............................................................17

*York Rsch. Corp. v. Landgarten*,
    1992 WL 373268 (S.D.N.Y. 1992)......................................................14

## STATUTES

28 U.S.C.
    § 1291.....................................................................................................5
    § 1330.................................................................................................5, 13
    § 1367...............................................................................................passim

## OTHER AUTHORITIES

Fed. R. App. P. 4(a)(1)(A) ..........................................................................5

Fed. R. Civ. P. 24(a)(2)................................................................11, 14, 15

106 N.Y. Jur. 2d Trusts § 162 ...................................................................17

7C Wright, Miller & Kane, Federal Practice & Procedure
    § 1908.1 (3d ed.) ................................................................................15

## PRELIMINARY STATEMENT

Hamilton Reserve Bank Ltd. ("HRB" or "Appellee")—a St. Kitts and Nevis based entity—defrauded Appellants Jesse Guzman, Ultimate Concrete LLC, and Intercoastal Finance Ltd. (the "Intervenors" or "Appellants") of the more than $50 million they deposited in the bank. While the deposit purported to be freely accessible to Appellants, when Appellants actually sought to withdraw their funds, Appellee refused, manufacturing spurious "compliance issues" in order to avoid paying back Appellants' money.

The reason is simple. The evidence in the record indicates that Appellee took Appellants' deposit and used it to purchase bonds issued by the government of the Democratic Socialist Republic of Sri Lanka ("Sri Lanka"). After the Sri Lankan government declined to pay its debt, Appellee was left insolvent and unable to pay its depositors. Unable or unwilling to admit this, it instead opted to lie to Appellants to avoid facing the consequences of its profligacy.

Appellee has now sought to enforce its purported rights under those same Sri Lankan bonds in United States federal court. Appellants seek to intervene in the action to protect their own rights to the Sri Lankan bonds purchased with their money. Appellee's insolvency and unwillingness to consent to suit in the United States (except, of course, when using United States courts to enforce its own purported rights) means that absent the opportunity to intervene in the action below,

1

the Appellants will lose any practical ability to protect their interest in the bonds and recover the $50 million they deposited with Appellee.

Nevertheless, the District Court concluded that it lacked supplemental jurisdiction to consider the Appellants' claims. That decision was in error. Because the Appellants satisfy the requirements for intervention as of right, the District Court necessarily possessed supplemental jurisdiction to entertain their claims. This Court should reverse the District Court's order.

## JURISDICTIONAL STATEMENT

(A)    The District Court has subject matter jurisdiction over the underlying action pursuant to 28 U.S.C. § 1330. The District Court incorrectly concluded that it lacked supplemental jurisdiction over Appellants' claims under 28 U.S.C. § 1367. (*See* Point 1 infra.)

(B)    This Court has jurisdiction under 28 U.S.C. § 1291 for this appeal from a final order.

(C)    This appeal is timely under Fed. R. App. P. 4(a)(1)(A), as the May 20, 2024 notice of appeal was filed within 28 days of the April 23, 2024 order denying Appellants' motion to intervene.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

1.    Did the District Court err by finding there was no subject matter jurisdiction over the Appellants' claims, despite the fact that the Appellants were

entitled to intervene as a matter of right?

## STATEMENT OF THE CASE

### Procedural History and Rulings Presented for Review

On June 21, 2022, Appellee filed suit against Sri Lanka in the United States District Court for the Southern District of New York, in an attempt to enforce the rights accruing to its purported beneficial interest in certain bonds issued by Sri Lanka. (Dkt. 1.) Sri Lanka moved to dismiss the complaint on September 21, 2022. (Dkt. 19.) The District Court authorized Appellee to amend its complaint, and Sri Lanka again moved to dismiss. (Dkts. 22, 23, & 25.) The District Court denied the motion. (Dkt. 33.) Appellee subsequently sought summary judgment. (Dkt. 44.) Before that motion was adjudicated, the District Court stayed the action. (Dkt. 68.) Sri Lanka's motion to renew the stay is currently pending before the District Court. (Dkt. 106.)

On February 29, 2024, Appellants moved to intervene in the proceeding below. (JA at A101.) On April 23, 2024, the District Court denied the motion to intervene. (JA at A185-189.) Notably, the District Court did not dispute that it had supplemental jurisdiction "over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy" including "claims that involve the joinder or intervention of additional parties." *See* 28 USC § 1367. Nevertheless, it refused to exercise that jurisdiction,

3

concluding (with minimal discussion) that the Appellants' claims "do not share a common nucleus of operative fact with Hamilton's claims against Sri Lanka." (JA at A188-189.)

## Factual Background

Intervenor Jesse Guzman is an individual residing in Columbus, New Mexico. (JA at A179.) Mr. Guzman is the is the sole manager, 100% owner, and president of Ultimate Concrete, LLC, a Texas limited liability company operating in Texas, New Mexico, Arizona and other states in the United States. *Id*. Intervenor Intercoastal Finance Ltd. is a company organized in Belize. Intercoastal Finance Ltd. is 100% owned by Jesse Guzman, and Mr. Guzman is the sole director and officer of Intercoastal Finance Ltd. *Id*.

Appellee states on its website that "it is the largest global bank in the region and the award-winning hometown bank of America's founding father Alexander Hamilton."[1] The website further states that "it serves a large and rapidly expanding clientele of local and international residents from 150 countries, maintaining a fortress balance sheet, pristine BSA/AML compliance, new account approval … and 24/7 [*Temenos*] digital banking, the world's most powerful banking technology." Appellee further claims that it has worldwide offices and affiliates and is the largest escrow agent in St. Kitts and Nevis. (JA at A121.) It also states that it provides "Bank

---

[1] Available at *https://hrbank.com/*, accessed on September 3, 2024.

4

Trust and Escrow Services" and "Business Banking." Appellee certifies the "Ultra Safety of Customer Deposits," and represents to its clients that customer deposits remain in cash and ***sovereign bonds***. *Id*.

Based on representations made by Appellee, in December 2021, Ultimate Concrete, LLC was induced to transfer $50 million from the company's Bank of America account in El Paso County, Texas to Appellee's Puerto Rico branch, Hamilton International Reserve Bank, LLC (formerly State Trust International Bank & Trust) in San Juan, Puerto Rico. (JA at A121-122.) The wiring instructions provided by Appellee stated that Hamilton International Reserve Bank, LLC was fully licensed in the U.S. and is under "Common Ownership" with Appellee. (JA at A122.) The wiring instructions reference Hamilton International Reserve Bank, LLC as "our U.S. bank" which transacts directly with the U.S. Federal Reserve. (JA at A122.)

Not coincidentally, around the same time that Appellants transferred the funds to Appellee, Hamilton Reserve Bank purportedly acquired a beneficial interest in approximately $250,000,000.00 in bonds issued by the government of Sri Lanka. (JA at A20.) Appellee is not the holder of record with respect to those bonds (the "Bonds"). (JA at A25-26.) Upon information and belief and unbeknownst to Appellants, Appellee misappropriated Appellants' $50 million deposit to purchase its purported beneficial interest in the Bonds.

5

Appellee's purchase of the Bonds was a poor investment decision. The Bonds were to mature on July 25, 2022, but on April 12, 2022 Sri Lanka declared a moratorium on payments on its external debt, including the Bonds. (JA at A16.) Despite being based outside of the United States, on June 21, 2022, Appellee commenced the action below in the United States District Court for the Southern District of New York in an attempt to enforce the rights accruing to its purported beneficial interest in the Bonds. (JA at A15-A94.) As discussed above, that action is currently stayed.

It did not take long for Sri Lanka's default on the Bonds—purchased with the funds deposited with Appellee by its customers—to become a problem for those very same customers. In June 2022, Appellants asked to withdraw $27,000,000 of the funds deposited with Appellee. (JA at A180.) The request was made through Appellants' account manager, Oksana Williams. However, rather than return Appellants' money, Appellee, through Ms. Williams, refused. (JA at A180-184.)

Appellee's refusal was premised on the supposed need to resolve certain "compliance issues." *Id*. In truth, Appellee simply did not have the money to pay out the Appellants' deposit. Appellants answered all of Appellee's compliance questions and provided all requested documents for over two years. *Id*. On numerous occasions, Appellants formally requested a meeting with Appellee's officers, including the CEO, CFO, CLO, and the account manager (Oksana Williams). (JA at

A180.) Appellee failed to respond to any of these requests. (JA at A180-184.) When asked for documents, Appellants repeatedly supplied those documents, only to be asked for the same documents time and again. *Id*.[2] The simple explanation for this behavior is that Appellee manufactured the purported "compliance issues" because it does not have the funds to cover Appellants' withdrawal, *as it had already spent those funds on the Bonds.*

Eventually, Appellants through their representatives, including an attorney in St. Kitts and Nevis, contacted Phillip Jones, Regulator of International Banking, Financial Services with the Nevis Island Administration.[3] (JA at A180-181.) Mr. Jones failed to intervene or provide any assistance. (JA at A180-184.) Mr. Jones also refused to communicate with Appellants or their counsel. *Id*. To date, Appellants have received no meaningful response from the Regulator, and all indications are that the Nevis bank regulators have no intention of intervening in the dispute. Appellants have since filed a sworn statement with the Nevis Police White Collar Crime Unit, but, as of yet, have received no relief. (JA at A184.) On July 16, 2024,

---

[2] To be clear, the money deposited by Ultimate Concrete, LLC was derived from government contract work. All of the money has been property reported and taxed. (JA at A179.)

[3] Appellee claimed below that it contacted Nevis bank regulators regarding concerns about Appellants' compliance. That is false. In fact, it was Appellants who contacted Phillip Jones, Regulator of International Finance in Nevis in August of 2022 in an effort to resolve the matter with Appellee for the return of their deposit.

Appellants formally requested mediation with Appellee. Appellee has failed to respond to that request.

Since June 2022, Appellee has refused Appellants' demand for return of their funds.

## SUMMARY OF THE ARGUMENT

The District Court erred when it held that it lacked jurisdiction to hear the Intervention claims. Contrary to settled precedent, the District Court considered whether it had supplemental jurisdiction over Appellants' claims based only on the "common nucleus of operative fact" test. This ignored the well-established principle that a court _necessarily_ possesses supplemental jurisdiction over intervention claims when the requirements for intervention as of right under Fed. R. Civ. P. 24(a)(2) are met.

Those requirements were plainly met. Appellants claim an interest relating to the property—the Bonds—that are the subject of the underlying action. Notably, Appellee does not contest that Appellants have deposits at Appellee and that Appellee is withholding Appellants' deposit due to supposed "compliance issues." Appellee's marketing materials state that one of the uses of customer deposits is to purchase sovereign debt, and the timing of Appellants' deposit with Appellee coincides with Appellee's purchase of the Sri Lanka bonds. At the very least, this creates an issue of fact whether Appellants' funds were used to purchase the Bonds.

8

Nor is Appellants' interest necessarily dependent on a legal interest in the Bonds—Appellants' allegations state a claim for equitable ownership of the Bonds through a constructive trust. Moreover, Appellants are so situated that disposing of the action may as a practical matter impair and impede Appellants' ability to protect their interest, as Appellee and Sri Lanka do not adequately represent their interest. The intervention is also timely— Appellants only discovered their interest in the Bonds in January 2024, and sought to intervene diligently.

Finally, even if this Court concludes that the District Court was correct to apply the "common nucleus" test alone, the District Court erred in its application.

## ARGUMENT

### I.    STANDARD OF REVIEW

While this Court "review[s] a district court's denial of a motion to intervene for abuse of discretion," *In re Bank of New York Derivative Litig.*, 320 F.3d 291, 299 (2d Cir. 2003), "[a] district court has abused its discretion if it based its ruling on an erroneous view of the law," *In re New York City Policing During Summer 2020 Demonstrations*, 27 F.4th 792, 799 (2d Cir. 2022). Moreover, "[i]n reviewing a district court's determination of whether it has subject matter jurisdiction, [this Court] review[s] factual findings for clear error and legal conclusions de novo." *See also Achtman v. Kirby, McInerney & Squire*, LLP, 464 F.3d 328, 333 (2d Cir. 2006).

## II.  THE DISTRICT COURT APPLIED AN INCORRECT STANDARD WHEN CONCLUDING THAT IT LACKED SUPPLEMENTAL JURISDICTION OVER APPELLANTS' CLAIMS

The District Court did not dispute that it had supplemental jurisdiction "over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy" including "claims that involve the joinder or intervention of additional parties."[4] *See* 28 USC § 1367. Nevertheless, it refused to exercise that jurisdiction, concluding without explanation that the Appellants' claims "do not share a common nucleus of operative fact with Hamilton's claims against Sri Lanka." (JA at A188-189.) That conclusory decision constituted an error of law, and should be reversed.

The District Court applied the incorrect standard in assessing its jurisdiction. It has long-been established—by courts in and out of this Circuit—that supplemental jurisdiction exists over intervention claims where the requirements for intervention as of right are met. *See, e.g., Md. Cas. Co. v. W.R. Grace & Co.,* 1996 U.S. Dist. LEXIS 868, at *3-4 (S.D.N.Y. Jan. 29, 1996) ("A court has supplemental jurisdiction over would-be intervenors that meet the requirements for intervention of right under the Federal Rules of Civil Procedure."); *Mut. Fire,*

---

[4] Although Appellee argued below that the District Court lacked jurisdiction over Appellants' claims because they would supposedly break diversity jurisdiction, the District Court correctly rejected that argument because the Court's jurisdiction rests on 28 U.S.C. § 1330, not diversity.

*Marine & Inland Ins. Co. v. Adler*, 726 F. Supp. 478, 481 (S.D.N.Y. 1989); *York Rsch. Corp. v. Landgarten*, 1992 WL 373268, at *1 (S.D.N.Y. 1992); *Grace United Methodist Church v. City of Cheyenne*, 451 F.3d 643, 673 (10th Cir. 2006); *United States v. Mitchell*, 2008 WL 11454765, at *2 (S.D. Ohio July 22, 2008). The District Court failed to consider whether the Appellants were entitled to intervene as of right pursuant to Fed. R. Civ. P. 24(a)(2). That was error.

## III.  APPELLANTS ARE ENTITLED TO INTERVENE AS OF RIGHT IN THE UNDERLYING ACTION

The prerequisites for intervention as of right are met here. A right to intervene exists where "an applicant: [i] files a timely motion; [ii] asserts an interest relating to the property or transaction that is the subject of the action; [iii] is so situated that without intervention the disposition of the action may, as a practical matter, impair or impede its ability to protect its interest; and [iv] has an interest not adequately represented by the other parties." *See United States v. Pitney Bowes, Inc.,* 25 F.3d 66, 70 (2d Cir. 1994). "Except for allegations frivolous on their face, an application to intervene cannot be resolved by reference to the ultimate merits of the claims which the intervenor wishes to assert following intervention." *Brennan v. N.Y.C. Bd. of Educ.*, 260 F.3d 123, 129 (2d Cir. 2001).

11

**A.    Appellants have an interest in the property that is the subject of the action.**

The Appellants plainly have "an interest relating to the property or transaction that this is subject of the action" sufficient to intervene as of right. "Courts have construed the nature of the interest [capable of supporting intervention] broadly." *See* 7C Wright, Miller & Kane, Federal Practice & Procedure § 1908.1 (3d ed.). For purposes of Rule 24(a)(2), an intervenor must have a "direct, substantial, and legally protectable" interest in the property or transaction that is the subject of the underlying action. *Brennan,* 260 F.3d at 129.

Appellants assert an interest in the Bonds that are at the heart of the underlying litigation. It was their wrongfully withheld funds that were used to purchase those Bonds. The law is well-established that a party is entitled to intervene as of right where they seek to assert an interest in a set of funds or property—here, the Bonds and Sri Lanka's payments thereunder—at issue in the underlying litigation. *See* 7C Wright, Miller & Kane, Federal Practice & Procedure § 1908.1 n.27 (3d ed.) (collecting cases); *Republic of the Philippines v. Abaya*, 312 F.R.D. 119, 123 (S.D.N.Y. 2015) (creditor of alleged owner of painting authorized to intervene in action concerning proceeds of sale of said painting); *Peterson v. Islamic Republic of Iran*, 290 F.R.D. 54, 59 (S.D.N.Y. 2013); *Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 367 (3d Cir. 1995) ("Thus, when a particular fund is at issue, an applicant claims an interest in the very property that is

12

the subject matter of the suit."); *Stuff Elecs. (Dong Guan) Ltd. v. For Your Ease Only, Inc.*, 509 F. Supp. 3d 252, 257 (E.D. Pa. 2020).

*Lawsky v. Condor Capital Corp*. 2014 WL 2109923 (S.D.N.Y. 2014) is illustrative. That case concerned a suit brought by the New York Superintendent of Finance seeking to end a defendant lender's operations. Banks holding a security interest in the defendant's loan portfolio sought to intervene in the suit. The court authorized intervention, explaining that it stood "to reason that a lengthy period of disengagement from [defendant's] sole source of income . . . will decrease the value of the Lenders' security interest" and "should the Receiver conclude that Condor must be liquidated, the Loan Portfolio will undoubtedly sell at a discount, also impairing the interest of the Secured Lenders." *Id*. at *6. Likewise here, Appellants have an interest in a common fund—the Bonds—that they will be unable to protect absent intervention.

Appellants' interest in the Bonds is neither contingent nor indirect. It is direct and legally protected. The evidence adduced in the record demonstrates that a portion of the Bonds was purchased using funds that Appellee misappropriated from the Appellants. It follows that the Appellants have a legally protected interest in the property that is the subject of the litigation. For example, the doctrine of constructive trust allows a trust to be imposed over property, like the Bonds, "when property has been acquired under such circumstances that the holder of the legal title may not in

13

good conscience retain the beneficial interest therein." 106 N.Y. Jur. 2d Trusts § 162. Such a trust will be imposed when (but not only when) there is a "(1) a confidential or fiduciary relationship, (2) a promise, (3) a transfer in reliance thereon, and (4) unjust enrichment." *Gargano v. Morey*, 165 A.D.3d 889, 890 (2d Dep't 2018).

Appellants' allegations satisfy those factors—1) Appellants possessed a fiduciary relationship with Appellee; 2) Appellee promised, like any bank, to hold money deposited by Appellants and provide Appellants with access to it; 3) Appellants transferred over $50 million to Appellee in reliance on those promises; and 4) Appellee, by retaining that money despite Appellants' request for its return, has been unjustly enriched thereby. This Court has recognized in analogous circumstances "that a constructive trust qualifies as a 'legal interest.'" *Willis Mgmt. (Vermont), Ltd. v. United States*, 652 F.3d 236, 245 (2d Cir. 2011) (constructive trust a "legal interest" for purposes of § 853(n)(6)(A)) (ellipses omitted); *see also Torres v. $36,256.80 U.S. Currency,* 25 F.3d 1154, 1159 (2d Cir. 1994) (claim to a constructive trust over certain property conferred standing to challenge forfeiture of that property). And the interest is not contingent—notably, "[a]lthough a constructive trust is a judicially recognized remedy, it arises when the underlying equities exist, not when it is announced[.]" *Willis Mgmt.*, 652 F.3d at 244.

**B.** **Without intervention, disposition of the action will, as a practical matter impair Appellants' ability to protect their interest in the Bonds.**

Appellants' practical ability to protect their interest in the Bonds will be impaired absent intervention in the underlying proceeding. Appellants are unlikely to be able to enforce their rights to the Bonds elsewhere. Despite making use of United States courts to enforce its supposed rights against a foreign state, Appellee has taken the position below that it is not itself subject to suit in the United States, and has refused to mediate or otherwise address the dispute in St. Kitts and Nevis.

Ultimately, resolution of Appellants' claims outside of this forum is futile: because Appellee is likely insolvent absent the payments owed under the Bonds, the only source of funds to satisfy Appellants' claims is the property at issue in this litigation—that is, the Bonds themselves.[5] Accordingly, the Appellants must be allowed to intervene in order to secure their interests in the Bonds.

**C.** **Appellants' interest is not adequately represented by the other parties.**

Appellants' interest is not adequately represented by the either Appellee or Sri Lanka. Appellee, of course, disputes the Appellants' interest in the Bonds altogether.

---

[5] Moreover, even if an alternative forum were available, it would be unduly burdensome to require Appellants to open a separate proceeding after this action concluded. *John v. Sotheby's, Inc.*, 141 F.R.D. 29, 35 (S.D.N.Y. 1992) ("awarding [the property] to an adverse party . . . and then compelling [the intervenor] to institute a separate action either to recover the [property] or for damages, [sufficiently] burdens [the intervenor's] interest" to support intervention).

While Sri Lanka has not taken a formal position on this, it is currently contesting its obligation to make payments under the Bonds in the first instance.

**D.    Intervention is timely.**

Lastly, the intervention is timely. "Timeliness defies precise definition, although it certainly is not confined strictly to chronology." *United States v. Pitney Bowes, Inc*., 25 F.3d 66, 70 (2d Cir. 1994). "Although the point to which the suit has progressed is one factor…it is not solely dispositive. Timeliness is to be determined from all the circumstances." *NAACP v. New York*, 413 U.S.345, 365-66 (1973). Among the factors that may be considered in determining whether an application is timely are "(1) how long the applicant had notice of the interest before it made the motion to intervene; (2) prejudice to existing parties resulting from any delay; (3) prejudice to the applicant if the motion is denied; and (4) any unusual circumstances militating for or against a finding of timeliness." *In re Bank of New York Deriv. Litig*., 320 F.3d 291, 300 (2d Cir. 2003).

There was no delay in Appellants' assertion of their rights. Appellants did not know of or come to suspect their interest in the Bonds until January of 2024. Appellee never communicated to Appellants that their funds were spent on the Bonds and, in fact, used the pretext of unspecified "compliance issues" to conceal the truth that they do not have Appellants' money and could not return it. Thus,

Appellants sought to intervene little more than one month after they first had notice of their claims to the Bonds.

Nor would any prejudice result from intervention. The action below is currently stayed, and has been stayed for months. There is no trial date nor judgment entered.

By contrast, the prejudice to Appellants if the motion is denied would be severe and complete. If the Court denies the motion to intervene, then Appellants will have no practical ability to protect their interest in the Bonds. Appellee has taken the position that no court—in the United States, Nevis, or otherwise—may entertain Appellants' claims, asserting instead that they must pursue mediation "**with a mediator selected by the Bank**." While Appellants have in fact requested such a mediation, Appellee has simply ignored that request. And given Appellee's probable insolvency, the Bonds purchased using the Appellants' funds are likely the Appellants' only avenue for recovery. At the very least, the difficulties, cost, and delay in effectuating service on Appellee in a separate lawsuit will prejudice Appellants.

Finally, Appellee's fraudulent conduct, pretextual allegations of "compliance issues," and dilatory actions, as well as the stay of the underlying litigation, constitute unusual circumstances militating for a finding of timeliness, as do the jurisdictional barriers faced by Appellants in pursing their rights.

17

**IV. APPELLANTS' CLAIMS SHARE A COMMON NUCLEAS OF OPERATIVE FACT WITH THE PRIMARY CLAIMS.**

Even under the standard applied by the District Court, supplemental jurisdiction exists over Appellants' claims. The District Court has supplemental jurisdiction "over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy" including "claims that involve the joinder or intervention of additional parties." *See* 28 USC § 1367. This Court has "held that disputes are part of the 'same case or controversy' within § 1367 when they 'derive from a common nucleus of operative fact.'" *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 335 (2d Cir. 2006). In assessing whether there is a "common nucleus of operative fact," this Court has "traditionally asked whether the facts underlying the federal and state claims substantially overlapped." *Id*.

The facts supporting the claims Appellants seek to assert "substantially overlap" with the facts underlying Appellee's claims against Sri Lanka. Like Appellee, Appellants seek to assert their right to payment under the Bonds from Sri

Lanka. This will require them to prove, like Appellee, that Sri Lanka has breached the contract governing the Bonds and the amounts owed thereunder.[6]

The District Court ignored these facts, instead offering the bare conclusion that "Intervenors' attempt to link their dispute with [Appellee] about their deposits to [Appellee]'s action to enforce Sri Lanka's obligations on the Bonds through a constructive trust theory fails." (JA at A189.) Given the foregoing, this was error, and should be reversed.

## **CONCLUSION**

For the reasons set forth above, District Court's decision denying intervention should be reversed and subject matter jurisdiction should be found over Appellants' claims. Alternatively, the motion should be remanded back to the District Court to assess its jurisdiction under the correct standard.

---

[6] While additional facts are also relevant to Appellants' claims—namely, Appellee's use of Appellants' funds to purchase the Bonds and its wrongful refusal to return Appellants' deposit—complete identity of underlying facts is not required by 28 U.S.C. § 1367, and would be especially nonsensical in the context of intervention, where parties are routinely allowed to assert competing claims to the same property.

Respectfully submitted,

September 3, 2024

By:    */s/ James H. Smith, Esq.*

James H. Smith, Esq.
Grant L. Johnson, Esq.
**MCKOOL SMITH, P.C.**
1301 Avenue of the Americas
32nd Floor
New York, NY 10019
Tel.: (212) 402-9400
Fax: (212) 402-9444
Jsmith@mckoolsmith.com
gjohnson@mckoolsmith.com

Rob Edwards, Esq.
Texas State Bar No. 24058290 (*pro hac*)
**GORDON DAVIS JOHNSON & SHANE P.C.**
4695 North Mesa St.
El Paso, Texas 79912
Tel: (915) 545-1133
Fax: (915) 545-4433
redwards@eplawyers.com
*Attorneys for Appellants Jesse Guzman, Ultimate Concrete, LLC, and Intercoastal Finance Ltd.*

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B), the word limit of Local Rule 32.1(a)(4) (A) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f): this document contains 4,336 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because: this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point font Times New Roman.

Dated: September 3, 2024